William D. DUBA, George O. Crouch, and Walter N. Evans, individually and as members of the Agricultural Stabilization and Conservation State Committee for the State of South Dakota, and Al Johnson, individually and as State Administrative Officer for the Agricultural Stabilization and Conservation Committee for the State of South Dakota, Appellants,

v.

Hilmer SCHUETZLE, Willis Rodenberg, John Pollock, and Martin Schaeffer, on behalf of themselves and all others similarly situated; O. H. Noste; and Herb Ritter, R. B. LaFave and Virgil Biel, as members of the Agricultural Stabilization and Conservation County Committee of Campbell County, South Dakota, Appellees.

No. 17023.

United States Court of Appeals Eighth Circuit.

May 23, 1962.

Rehearing Denied June 21, 1962.

David L. Rose, Atty., Civil Division, Dept. of Justice, Washington, D. C., for appellants and William H. Orrick, Jr., Asst. Atty. Gen., Washington, D. C., Harold C. Doyle, U. S. Atty., Sioux Falls, S. D., and Alan S. Rosenthal, Atty., Civil Div., Dept. of Justice, Washington, D. C., were with him on the brief.

Morris Myers, Aberdeen, S. D., for appellees and Joe L. Maynes, Aberdeen, S. D., was with him on the brief.

Before VOGEL, VAN OOSTERHOUT and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

This is an appeal from the order of the District Court for the District of South Dakota, entered on March 13, 1962, granting, upon motion of the plaintiffs, appellees, a preliminary injunction which in effect requires the South Dakota State Agricultural Stabilization and Conservation Committee of the Department of Agriculture, hereinafter referred to as the "State Committee" to remove the Campbell County office from Herreid, South Dakota, and to establish the same in Mound City, South Dakota. On March 19, 1962, after motion to stay injunction had been denied by the district court, this court, on motion of defendants, appellants, ordered a stay of that portion of the lower court's order which required appellants to take affirmative action in removing or restoring the office to Mound City, pending determination of this appeal.

The crucial issue before us is whether the district court was vested with jurisdiction to entertain the action and to enter the order appealed from. To intelligently approach this question we deem it advisable to relate in some detail the history of this litigation.

The Agricultural Stabilization and Conservation Committees of the Department of Agriculture, hereinafter referred to as ASC, were established by the "Soil Conservation and Domestic Allotment Act", 16 U.S.C.A. § 590a et seq., which directs the Secretary of Agriculture to administer the various programs through local and state committees. 16 U.S.C.A. § 590h(b). The Secretary "shall make such regulations as are necessary relating to the selection and exercise of the functions of the respective committees, and to the administration, through such committees, of such programs" ibid, and the Secretary is to appoint members of the State Committee from among farmers who are legal residents of the State. Under the Act, local county committee members are to be selected by delegates to a county convention, which delegates are to be elected by cooperating farmers within the county area. In any county in which there is only one local committee, the committee shall also be the county committee. ibid.

The Secretary of Agriculture has promulgated regulations which, in effect, establish a "hierarchy of command," with general supervision being delegated to a Deputy Administrator who acts for the Secretary of Agriculture in the daily administration of the various agricultural programs. Section 7.20 of the Regulations, 7 C.F.R. § 7.20, specifically provides that the County Committee, "*subject to the general direction and supervision of the State committee, * * *  shall be generally responsible for carrying out in the county the agricultural conservation program * * * *"* (Emphasis supplied); § 7.20a authorizes the county committee to "[E]nter into leasing agreements for such office space as needed in accordance with prescribed procedures"; § 7.28 empowers the State Committee to suspend and remove any county committeeman for incompetence, malfeasance or non-feasance of duties or for seriously impeding the effectiveness of any agricultural program administered in the county. Any committee member so suspended has the right to appeal to the State Committee, and if dissatisfied with the decision of that agency, to the Deputy Administrator. 7 C.F.R. § 7.30. Section 7.32 of the Regulations provides that the office of the County Committee "shall be located in a place selected by the county committee subject to the approval of the State committee."

The filing of this suit was the outgrowth of what appears to be a bitter controversy over the relocation of the Campbell County ASC office. As the following summary of facts will disclose, the dispute was, in the main, between the State Committee members on the one

hand the County Committee members and local citizens on the other.

Briefly stated, for over twenty years the office of the Campbell County ASC Committee had been located in Mound City, South Dakota, which is the county seat. For several years beginning in 1957, the physical aspects of the office had been the subject of unfavorable reports made by the Department of Agriculture. Specifically, the Department's position was that the office was too small, was without running water, or adequate sanitary and heating facilities. Many times the State Committee had urged the local people to find more suitable quarters. Early in 1961 a new State Committee assumed office and in June, 1961, its members met with the local committee, requesting that it obtain bids for new office space. The State Committee also met with the "Mound City Boosters Club" as well as with residents of nearby Herreid, South Dakota, some eight miles distant, for the purpose of securing bids for office space. Officials and other citizens of Herreid were interested in having the county office moved to that city.

In July, 1961, the members of the Campbell County ASC Committee signed a lease for a new office building to be erected in Herreid. The same committee later attempted to rescind the lease, but the rescission was not approved by the State Committee. Two members of the three-man County Committee advised they would not remove the office to Herreid, and on September 1, 1961, the State Committee suspended these two members in accordance with applicable regulations for failure to perform duties and for' impeding the administration of the programs. On September 15, 1961, trucks arrived in Mound City to transport office records and equipment to Herreid, but the transfer was physically prevented by a group of several hundred persons who opposed the move, among whom were the two alternate members of the County Committee who had taken office upon the suspension orders of September 1. These two members were also suspended by the State Committee. None of the four suspended members appealed from their suspension.

On the same day, September 15, 1961, the instant suit was filed. The plaintiffs in the action were four local farmers suing on behalf of themselves and "every and all persons similarly situated who are farmers within Campbell County, South Dakota." The defendants were the three members of the ASC State Committee of South Dakota and the State Administrative Officer for South Dakota. The complaint alleged that jurisdiction was based upon 5 U.S.C.A. § 1009, the "Administrative Procedure Act." In general, the complaint alleged that the defendants were acting unlawfully and beyond the authority of the statutes and regulations in effecting relocation of the county office. The relief requested was for a declaratory judgment holding invalid the relocation of the office and for an injunction restraining defendants under such declaratory judgment. On the same day a temporary restraining order was issued. Thereafter, and on September 23, 1961, pursuant to motion of plaintiffs, the court issued its preliminary injunction restraining the defendants from locating the Campbell County office at Herreid, South Dakota.

On October 9, 1961, defendants' motion to dismiss the action was denied, but the court took under advisement a motion to dissolve the preliminary injunction. While this motion was pending, plaintiffs' petition was amended to join as plaintiffs the members of the new County Committee (apparently elected late in September, 1961) and the lessor of the premises which had been occupied as the Campbell County office in Mound City.

On January 24, 1962, the district court filed a memorandum decision dissolving the preliminary injunction upon the ground that the new County Committee, "subject to the approval of the State ASC" could decide on the matter of relocation of the office. Schuetzle v. Duba, D.C., 201 F.Supp. 754.

In the meantime, the new County Committee attempted to rescind the Herreid lease and to secure authority to establish the Campbell County office in a new building which had been erected in Mound City. Such authority was denied by the State ASC and on December 1, 1961, the Deputy Administrator, Washington, D. C., advised that the local committee was not authorized to incur any expense or obligation for the new building. It appears, however, that the County Committee terminated the lease on the old premises in Mound City and moved to the new building in that city shortly after January 1, 1961. Upon instructions from the State ASC no funds were provided for payment of rent, etc., on the new Mound City building, the clerk who refused to issue such vouchers was fired by the local committee, and all remaining employees in Mound City immediately resigned.

This brings us to the events leading directly to the issuance of the second preliminary injunction, the subject of the appeal before us. Pursuant to authorization of the Deputy Administrator, on March 9, 1962, representatives of the State Committee journeyed to Mound City and instructed members of the County Committee to close the office in that city and open the office in Herreid. These members refused to move and refused to resign, and thereupon two of the committee members and one alternate member were suspended. Some official records and office equipment were removed from the Mound City office but apparently before all equipment was transferred, a large group of Mound City citizens appeared and ordered the state agents out of town. Since that time it appears that the county office has been operated at Herreid, apparently under the direct supervision of the State Committee.[1] As heretofore stated, the district court entered the instant preliminary injunction March 13, 1962, requiring the State Committee members to relocate the county office in Mound City and return all items removed.

Defendants contend here, as they have throughout this litigation, that the district court is without jurisdiction of the controversy and issues which are the subject of the original and amended complaints. The broad claim is that in the absence of a statute which confers jurisdiction, courts generally are without power or authority to litigate and adjudicate controversies and matters arising from internal administration of a department or agency within the executive branch of the Government. More specifically, defendants urge that plaintiffs have no standing to challenge the administrative decision to locate the Campbell County ASC office in Herreid; that there is no justiciable controversy because a determination as to location of the ASC office is peculiarly within the area of internal administration and administrative discretion; and that the court is without authority to issue a writ of mandamus requiring affirmative action by the defendant members of the State Committee and its administrative officer.

For reasons presently stated, we conclude that the controversies presented by the amended complaint are not within the competence of a federal court, and that lacking jurisdiction, the preliminary injunction must be vacated.

Concededly, the Soil Conservation and Domestic Allotment Act does not provide for judicial review of actions of the state, county and local committees, nor does the Act empower federal courts to litigate and adjudicate controversies and disputes arising in the administration of the program. Plaintiffs contend, however, and the trial court held, as the opinion dissolving the first injunction will reflect, D.C., 201 F.Supp. 754, that the power of the court to review the questioned procedures is implicit in the Administrative Procedure Act, and par-

---

[1]. Section 7.28(b), 7 C.F.R., provides that the State Committee may administer programs directly when, "in the event of suspensions or vacancies there are less than two members * * * available to serve on the County Committee * * *"

ticularly in § 1009 of Title 5 U.S.C.A., which provides:

"§ 1009.  *Judicial review of agency action*

"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.

"*Rights of review*

"(a) Any person suffering *legal wrong* because of any agency action, or adversely affected or aggrieved by such action *within the meaning of any relevant statute*, shall be entitled to judicial review thereof." (Emphasis supplied).

Plaintiffs would have us read and interpret this statute in its broadest sense, i. e., that any citizen who feels himself aggrieved by any action of any administrative agency is entitled to have his grievance resolved by the courts.

■ Emanating from litigation involving the legal right or standing to question the validity, fulfillment, regulation, or administration of federal programs, is the principle that one seeking to do so must first establish a *legal* right, personal to himself, as opposed to the interest of the public generally. In Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, the State of Massachusetts and an individual taxpayer of the state sought to enjoin enforcement of the "Federal Maternity Act of 1921." The Supreme Court in holding that the taxpayer had no standing to question the validity of the Act, announced the principle in these terms, at p. 488, of 262 U.S. at p. 601 of 43 S. Ct.;

"The party who invokes the power [of the court] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally."

The issue of public v. private rights was further defined in Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1103. There several steel companies, through an action for declaratory judgment and injunction, had attacked a determination by the Secretary of Labor of minimum wage scales within the industry, claiming damage through loss of bids on Government contracts. In ruling that plaintiffs had suffered no legal wrong, cognizable by the courts in such an action, the court stated at p. 125, 60 S.Ct. at p. 875:

"Respondents, to have standing in court, must show an injury or threat to a particular right of their own, as disinguished from the public's interest in the administration of the law."

To like effect are Tennessee Electric Power Co. v. TVA, 306 U.S. 118, 137, 59 S.Ct. 366, 83 L.Ed. 543, a suit by private power companies attacking the TVA program with claim of loss of profits by reason of unlawful competition of the federal agency; Alabama Power Co. v. Ickes, 302 U.S. 464, 479, 58 S.Ct. 300, a suit by private power companies claiming damages by reason of an alleged unconstitutional federal power program; Benson v. Schofield, 98 U.S.App.D.C. 424, 236 F.2d 719, cert. den. 352 U.S. 976, 77 S.Ct. 363, 1 L.Ed.2d 324, action by milk producers for injunction against proposed order by Secretary of Agriculture extending marketing areas.

■ It has also been judicially determined that the Administrative Procedure Act was not designed to and in fact has not changed the basic principle that one must have suffered a *legal wrong* in order to have standing to challenge programs administered by governmental agencies. The scope of review under § 10(a) of the Act, 5 U.S.C.A. § 1009(a) was reviewed and considered at length in Kansas City Power & Light Company v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924, cert. den. 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780, where private electric power companies sought to enjoin federal officers and agencies from carrying out

a federally supported power program, alleging loss from unlawful competition from Government contracts. The court, at pages 932, 933, of 225 F.2d, considered the history of the Act, observing that in the view of the attorney general, § 10(a) preserved the rules developed by the courts in such cases as Alabama Power Co. v. Ickes, supra, 302 U.S. 464, 58 S. Ct. 300, 82 L.Ed. 374; Commonwealth of Massachusetts v. Mellon, supra, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; Perkins v. Lukens Steel Co., supra, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1103, and ruled that plaintiff companies gained no standing to sue by reason of the Act. See also Ove Gustavsson Contracting Company v. Floete, 2 Cir., 278 F.2d 912, 914, cert. den. 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188.

■ In light of the teachings of the foregoing cases we are satisfied that plaintiffs have not shown that they have suffered a *legal wrong* because of the action of defendants, and have not been "adversely affected or aggrieved * * * within the meaning of any relevant statute." As the case is here posited, four of the plaintiffs are designated as farmers, one is the owner of the building formerly occupied by the county office in *Mound City and three are designated as* members of the Campbell County ASC Committee (they were suspended subsequent to filing of amended complaint). In our view their interest in the location of the county office is common to that shared by other citizens in the Mound City area. Economic loss which may accrue to Mound City and the surrounding area by reason of the removal of the office to Herreid is insufficient, in the absence of any statutory right, to confer upon plaintiffs legal standing to maintain this action. Their loss, if any, would be *damnum absque injuria.* Our holding that plaintiffs are without standing should not be interpreted to imply that members of local or county committees possess such right. In our view, they do not, for by the regulations the location of the county office is made subject to the approval of the State Committee.

■ We are also convinced that there is no justiciable controversy upon which the court may grant relief. It is to be observed that none of the plaintiffs is making any complaint personal to himself with respect to administration of the benefits of the soil programs; no constitutional attack is lodged against the Act or the manner of administering the provisions thereof by the Secretary of Agriculture; plaintiffs do not question the Secretary's authority to promulgate regulations, nor do they even challenge the validity of the regulations, as did plaintiffs in cases cited above. Succinctly stated, plaintiffs' real complaint is that they are aggrieved by the manner in which the Secretary's appointees are applying the regulations.

Since we are concerned with a department within the executive branch of the Government, the pronouncement of the Supreme Court in Massachusetts v. Mellon, supra, 262 U.S. at p. 488, 43 S.Ct. at p. 601, is pertinent:

"The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct or restrain the action of the other."

In Perkins v. Lukens Steel Co., supra, 310 U.S. at pp. 131–132, 60 S.Ct. at p. 878, the court, in ruling that it had no power to interfere with the discretion of administrative officials as to the determination of standards to be written into Government contracts, observed:

"The case before us makes it fitting to remember that 'The interference of the Courts with the performance of the ordinary duties of the executive departments of the Government, would be productive of nothing but mischief; and we are quite satisfied that such a power

was never intended to be given to them.'" [Citing Decatur v. Paulding, 14 Pet. 497, 516, 10 L.Ed. 559.]

The courts have refused to interfere with ordinary ministerial and discretionary decisions and conduct peculiarly within the internal workings of an executive department. Typical is Updegraff v. Talbott, 4 Cir., 221 F.2d 342, where an ex-army officer brought suit for a mandatory injunction to require the Secretary of the Air Force to correct his military records and to present them to the President for action on his claim for disability benefits. Plaintiff there had followed all administrative provisions for appeal of his case, and in the federal district court he relied upon the Administrative Procedure Act, but the court ruled that it lacked jurisdiction over matters within the discretion of the executive department. Cf. also Trans World Airlines v. Civil Aeronautics Board, 2 Cir., 184 F. 2d 66, cert. den. 340 U.S. 941, 71 S.Ct. 504, 95 L.Ed. 679; Queensboro Farms Products v. Wickard, 2 Cir., 137 F.2d 969; United States v. Mischke, 8 Cir., 285 F.2d 628.

█ It is a matter of common knowledge that a governmental body or agency will encounter problems relating to administration, similar to those of private enterprises. Employees must be hired, supplies purchased, procedures set up for control and administration of funds; the selection of sites, the purchase or lease of premises to carry on the business, and myriad other problems. To us it is inconceivable that such ordinary internal affairs of any governmental agency or department should be subject to review and control by the judicial arm of Government. By its very terms the Act creating the local committees gives broad discretion to the Secretary to make such regulations "as are necessary relating to the *selection and exercise of the functions* of the respective committees * * *" (Emphasis supplied). Since Congress has given such power to the Secretary, in the absence of explicit provision for judicial review, courts must leave problems of internal administra-tion to the proper administrative officials.

We have studiously attempted to avoid any discussion of the merits of plaintiffs' claims of unfair dealing on the part of the members of the State Committee. Assuming arguendo that there is basis for the charges made, the indisputable fact is that the federal courts should not and cannot adjudicate the complaints and settle the controversy. Those who are ex-members of the Campbell County ASC Committee by reason of having been suspended have been provided an avenue of appeal, but, as we understand, none has chosen this path of vindication. In any event, the instant conflict is solely between and within the confines of the administrative agency, and by statute the Secretary of Agriculture is vested with discretionary power to regulate such affairs.

Accordingly, it follows that the order granting the preliminary injunction is vacated and the case is remanded to the district court with directions to dismiss the action.

