Fred O. HAHN, John Pingree, Louis E. Jemas, Henry T. McDonald and James Barnett, on behalf of themselves and all other members of the Employees Association, GSA, Region 6, Inc., Mart Building Unit, 12th and Spruce Streets, St. Louis, Missouri, an unincorporated association, Plaintiffs,

v.

Richard W. AUSTIN, individually and as Regional Administrator, General Services Administration, Region 6, Dee A. Patterson, individually and as Chief, Buildings Management Division, Public Buildings Service, General Services Administration, Region 6, C. L. Kneale, individually and as Area Manager, Area 5, Public Buildings Service, General Services Administration, Region 6, and Gary Lunsford, individually and as Building Manager, Mart Building, Public Buildings Service, General Services Administration, Region 6, Defendants.

No. 67 C 202(1).

United States District Court
E. D. Missouri, E. D.
June 5, 1968.

Gerald A. Rimmel, Susman, Willer, Rimmel & Elbert, St. Louis, Mo., for plaintiffs.

Veryl L. Riddle, U. S. Atty., Jim Shoemake, Asst. U. S. Atty., St. Louis, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

HARPER, Chief Judge.

This matter was tried before the court on January 17, 1968. Defendants had filed a motion to dismiss for lack of jurisdiction over the subject matter on December 27, 1967, but the court reserved ruling on the motion due to the short time remaining before the trial setting. Several different grounds for dismissal are advanced in the motion, one of which is lack of standing on the part of plaintiffs to challenge the administrative action of which they complain. Since the court finds that dismissal must be granted on this ground it is unnecessary to consider the other questions raised in the motion and at the trial.

The testimony and the pleadings disclose that this suit is brought on behalf of the approximately 4,500 members of the Employees Association, GSA, Region 6, Inc., Mart Building Field Unit, an unincorporated association of which the plaintiffs are officers and directors. This organization, which will be referred to as the Field Unit, is the employee welfare and recreation association for the civilian employees of the Federal Government at the Mart Building in St. Louis, Missouri. It is affiliated with a regional or parent association, the Employees Association, GSA, Region 6, Inc., which has its headquarters in Kansas City, Missouri, and is a Missouri pro forma decree corporation established in 1947 under Article 10, Chapter 33 of R. S.Mo.1939.

The defendants are officials of the General Services Administration having charge of various aspects of the operation at the Mart Building. On April 7, 1967, one of the defendants notified the Field Unit that GSA had decided to turn over the operation and presumably the profits of all vending machines in the Mart Building to blind persons licensed by the Missouri Bureau for the Blind. The Field Unit has since its inception received all of the revenues from the vending machines, amounting currently to about $20,000.00 per year, and at present it has no other source of income.

Plaintiffs state that the action on the part of defendants is being taken under the authority of Federal Property Management Regulations, Subpart 101–19.2, 41 Code Federal Regulations, promulgated by the GSA. They deny that this regulation confers such authority, but assert that if it does it is invalid as in excess of the authority granted by the Randolph-Sheppard Vending Stand Act, 20 U.S.C.A. §§ 107–107f, to provide such opportunities for the blind. They seek a judicial determination of these matters by declaratory judgment and an injunction against transfer of the operation of the machines to blind persons.

Defendants assert that plaintiffs cannot challenge the administrative action involved because they lack a sufficient interest in the vending machine revenues to give them standing to sue. Defendants rely primarily on the doctrine that a legal right is required. See Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); Tennessee Electric Power Co. v. TVA, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1937). Plaintiffs contend that they have indeed suffered a "legal wrong"; but even if the court decides that they

have not, they have certainly been "adversely affected in fact" and, therefore, possess a sufficient interest. See 3 Davis, Administrative Law, § 22.02 (1958).

Plaintiffs' claim that the Field Unit is legally entitled to the vending machine profits rests largely on what they consider to be the terms of transfer under which the GSA obtained control of the Mart Building. Prior to July 1, 1961, the building was operated by the Department of the Army, and at that time an organization known as the Post Welfare Council represented all of the civilian employees in the building and received income from the vending machines present. The building was transferred on July 1, 1961, pursuant to a written agreement between the Army and the GSA (a part of Plaintiffs' Exhibit 11 marked Exhibit 4 in request for admissions). This document, which requires certain services to be maintained by the GSA for its Army tenants, does not mention vending machines, nor does it treat in any respect future arrangements for employee organizations.

Plaintiffs contend that the arrangement which in fact followed—the transformation of the Post Welfare Council into the Mart Building Field Unit supported as before by vending machine revenues—was orally agreed to by the GSA in its negotiations with the Army. They cite the minutes of a GSA Employees Association meeting held on June 21, 1961 (quoted in a letter which is their Exhibit 7). These minutes evidently deal with the appearance of a GSA official before the Association to explain aspects of the changeover affecting the Mart Building employee group. The portion relating to vending machine profits is as follows:

"He (the GSA official) advised that in order to create goodwill the Association was advised the profits from the vending machines in this Building would be turned over to the employees association for their activities and further advised of the upgrading of the cafeteria including more attractive prices. The income from the vending machines will be approximately $800 per month."

Apart from the fact that the minutes state that an Army official was also in attendance, there is not the slightest indication from this or other documents introduced by plaintiffs that the arrangement contemplated was insisted upon by the Army or was a term of the agreement between the Army and the GSA. It is just as consistent with the facts before the court to say that the continuance of the old arrangement met the purposes of the GSA and the practice of granting vending machine revenues was therefore adopted by it on its own initiative. Thus, without regard to the legal merits of plaintiffs' attempt to establish a right to the revenues as a sort of third-party beneficiary of the Army's agreement with the GSA, no foundation in fact for the existence of such a contractual provision in favor of the Field Unit has been shown.

Another approach to the question whether the Field Unit will suffer a legal wrong is through the Randolph-Sheppard Act, the statute on which defendants rely for authority to implement the new arrangement.

Plaintiffs urge that the Randolph-Sheppard Act provides a preference to the blind only as to the operation of *vending stands* and that Congress did not intend to affect the operation of existing vending machines by employee groups except insofar as might be necessary to protect the business of *vending stands* run by the blind. They rely on legislative history and the nature of the single reference to vending machines found in the Act, which appears in the initial section thereof (20 U.S.C.A. § 107):

"For the purpose of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting, blind persons licensed under the provi-

sions of this chapter shall be authorized to operate vending stands on any Federal property where such vending stands may be properly and satisfactorily operated by blind persons. In authorizing the operation of vending stands on Federal property, preference shall be given, so far as feasible, to blind persons licensed by a State agency as provided in this chapter; and the head of each department or agency in control of the maintenance, operation, and protection of Federal property shall, after consultation with the Secretary, and with the approval of the President, prescribe regulations designed to assure such preference (*including assignment of vending machine income to achieve and protect such preference*) for such licensed blind persons without unduly inconveniencing such departments and agencies or adversely affecting the interests of the United States." (Emphasis added.)

■ But, this section also shows that the purpose of the Act is to establish a means for blind persons to earn a livelihood by granting certain preferences to them, not to regulate the operation of all vending concessions on Federal property. Employee groups are nowhere mentioned in the Act; nor is there any affirmative provision for maintaining the status quo where the blind are not granted a preference. Therefore, while plaintiffs' contention concerning the scope of the preference given the blind may have merit, a question which the court does not decide, there are no grounds for concluding, as plaintiffs urge, that the act affirmatively bestows a legal interest in vending machine revenues upon groups which may under existing arrangements receive such revenues in lieu of the blind. In other words, the blind are the persons sought to be benefited; the plaintiffs and the persons they represent are not.

■ Since plaintiffs cannot establish that they have a legally enforceable right either by contract or by legislative enactment, their suit must fail unless standing can be rested on the economic

harm the Field Unit will admittedly suffer.

In support of their contention that such an interest is sufficient plaintiffs point to Section 10(a) of the Administrative Procedure Act, 5 U.S.C.A. § 702:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

However, the Court of Appeals for this circuit has held that Section 10(a) was not intended to greatly change the interest necessary to support standing, as is apparent from the stated requirement that a plaintiff must either suffer a "legal wrong" or be "adversely affected or aggrieved * * * *within the meaning of any relevant statute*." Duba v. Schuetzle, 303 F.2d 570, 574–575 (8th Cir. 1962), quoted recently in REA v. Northern States Power Co., 373 F.2d 686, 692–693 N. 9 (8th Cir. 1967). Since the court has concluded that the Randolph-Sheppard Act, the only statute which might so apply here, was intended neither to benefit employee organizations nor to regulate their affairs, this section is of no aid to plaintiffs.

■■ The Field Unit is not in the position of a business competitor contesting governmental regulatory action favorable to a rival firm so as to be an appropriate representative of the public interest under the doctrine of FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940). The type of administrative action involved is completely different and the stake which the Field Unit has in the outcome is in no way connected to the public interest. See REA v. Northern States Power Co., supra. The Field Unit is simply an alternative donee of a certain type of governmental grant. As such its interest is financial and nothing more. That the Supreme Court continues to view a purely financial interest as insufficient to confer standing plainly appears in the recent case of Abbott

Laboratories v. Gardner, 387 U.S. 136, 153–154, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), where the court states the holdings of Perkins v. Lukens Steel Co., supra, and Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) in precisely these terms.

For the foregoing reasons, defendants' motion to dismiss for lack of jurisdiction is sustained.