**Dorothy BENSON, Plaintiff,**

v.

**The CITY OF MINNEAPOLIS, its Mayor, Council, Coordinator, and Planning Department; the Minneapolis Housing and Redevelopment Authority; the Regional Director, Department of Housing and Urban Development; the United States Agency "Roe;" the City of Minneapolis Model Neighborhood Ad-Hoc Committee; Technical Resource Committee; the Temporary Committee for Model City and its Officers, Reverend Warren Sorteberg, Chairman, and Merrill Anderson, Secretary; and John Doe and Richard Roe, Defendants.**

No. 4-68-Civ. 94.

United States District Court
D. Minnesota,
Fourth Division.

July 1, 1968.

**616**

Seth R. Phillips, St. Paul, for plaintiff.

Jerome F. Fitzgerald, Asst. City Atty., for City of Minneapolis.

Joseph T. Walbran, Asst. U. S. Atty., for Dept. of Housing and Urban Development.

## MEMORANDUM DECISION

LARSON, District Judge.

This case comes before the Court on plaintiff's amended complaint and motion for temporary injunction and defendant Department of Housing and Urban Development's (HUD) motion to dismiss.

The present controversy developed as a result of a planning grant offered to the City of Minneapolis by HUD after HUD determined that Minneapolis qualified for the grant under the Demonstration Cities and Metropolitan Development Act (42 U.S.C. §§ 3301–3313). Plaintiff, a resident of the area proposed for study by the planning grant, and a taxpayer, representing herself and all other persons similarly situated, purports to bring a class action in which she attacks the validity of the Act and this particular planning grant on various constitutional grounds which will be specified in detail in discussing the law applicable to this case.

The original complaint named a number of defendants. All have been dismissed except for the City of Minneapolis and HUD.

I. Turning first to plaintiff's amended complaint and motion for tem-

porary injunction, 28 U.S.C. §§ 2282, 2284 require a Three Judge Court to convene in a suit for injunction against an Act of Congress. However, the cases construing this statute uniformly demonstrate that a single District Court judge may act to dismiss a complaint which attacks the validity of an Act of Congress if it fails to raise any substantial constitutional questions. California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); White v. Gates, 102 U.S.App.D.C. 346, 253 F.2d 868 (1958). The District Court judge acts without jurisdiction only if he decides substantial constitutional issues raised in the complaint on the *merits*. Wicks v. Southern Pacific Co., 231 F.2d 130, cert. den. Wicks v. Brotherhood of Maintenance of Way Emp., 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471 (9 Cir. 1956). Further, an initial determination that a Three Judge Court is necessary is not final and the District Court judge may thereafter determine that no substantial constitutional questions are presented. See, Lee v. Roseberry, 94 F.Supp. 324 (D.C.Ky.1956); Andrew G. Nelson, Inc. v. Jessup, 134 F.Supp. 218 (S.D.Ind.1955).

There is some authority for the position that challenge to the constitutionality of application of an administrative regulation is not considered an attack on an Act of Congress such that a Three Judge Court must be convened. Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189 (1939); Sardino v. Federal Reserve Bank of New York, 361 F.2d 106, cert. den. 385 U.S. 898, 87 S.Ct. 203, 17 L.Ed.2d 130 (2 Cir. 1966). The relevance of this authority in the instant case is unclear in that the precise legislation plaintiff is objecting to is not altogether clear.

In any event, the threshold question presented to this Court by plaintiff's amended complaint and motion for temporary injunction is whether any substantial constitutional questions are raised concerning the Act. Plaintiff's complaint attacks the Act as unconstitutional under the First, Fourth, Fifth, Ninth and Fourteenth Amendments. Plaintiff's motion and brief in support thereof additionally allege the Act is unconstitutional in that it is void for vagueness; an unconstitutional delegation of power because of the lack of definite standards; a violation of plaintiff's First, Fourth, Fifth, Eighth, Ninth, Tenth and Fourteenth amendment rights in its application.

Analysis of the constitutional questions plaintiff raises reveals that none can be deemed substantial.

■■ First, the void for vagueness doctrine raises no substantial constitutional question. This doctrine has its genesis in criminal sanctions and simply means that criminal responsibility should not attach where one could not reasonably understand that his conduct was proscribed. United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). It is thus obvious that a mere *grant* of power to an agency, absent involvement of criminal sanctions, does not raise this constitutional issue.

■■ Second, it is argued that the delegation is illegal in that the standards set forth in the Act are lacking in specificity. First, it would appear that the Act does set forth a clear policy and explicit standards to guide the secretary of HUD. Second, the law on delegation today indicates that very minimal, if any, standards need exist in Federal legislative grants in order to insulate them from an unlawful delegation attack. See, Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948). Viewed in light of these cases, the delegation attack does not raise a substantial constitutional question.

■ Third, plaintiff asserts the Act violates her First Amendment rights to freedom of speech, assembly, and right to petition for redress of grievances. This contention is without merit and will not be discussed except insofar as to observe

that nowhere within the Act itself is there the faintest suggestion that it by design, or in application, has the effect plaintiff complains of. For this reason no substantial question is raised concerning the constitutionality of the Act.

■ Fourth, plaintiff asserts the Act violates her Fourth Amendment right to be free from unreasonable searches and seizures. No substantial constitutional question is raised. First, the Act authorizes no "searches" whatsoever and it does not follow that because searches have occurred pursuant to qualifying for the planning grant that the Act is ipso facto unconstitutional. In such a case the constitutionality of the Act is simply not in issue. Second, it should be noted that Camara v. Municipal Court of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), does not extend the Fourth Amendment requirement for a search warrant as far as plaintiff suggests. Agency health inspectors normally need seek a search warrant only after entry is refused. *Camara*, supra.

■ Fifth, plaintiff asserts the Act denies her Fifth and Fourteenth Amendment rights in that property is taken without compensation and without equal protection of the law. These assertions are without merit and raise no substantial constitutional questions. Since the grant in question is merely for planning, it is difficult to visualize how plaintiff can argue that a "taking" has occurred in that condemnation has not been initiated or even suggested pursuant to this particular grant. Further, assuming, arguendo, the grant was given with a view toward condemnation of plaintiff's property and that plaintiff's attack is timely, the cases still unequivocally dispose of Fifth and Fourteenth Amendment arguments. The leading case, Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), in upholding the constitutionality of the District of Columbia Redevelopment Act, states this in no uncertain terms:

"In the present case, the Congress and its authorized agencies have made determinations that take into account a wide variety of values. It is not for us to reappraise them. If those who govern the District of Columbia decide that the Nation's Capitol should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way."

City of Cleveland v. United States, 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274 (1945), is another case which upheld the constitutionality of analogous Federal legislation (Low Rent Housing Act of 1937).

■ Sixth, plaintiff asserts the Act is unconstitutional because it imposes cruel and inhuman punishment in violation of the Eighth Amendment. This assertion is without merit and raises no substantial constitutional question. First, the Act imposes no punishment nor is there even the slightest suggestion that any of the provisions of the Act resemble punishment. For this reason alone it is difficult to imagine that the Act could be characterized as cruel and unusual punishment. Second, and perhaps more persuasive, this argument has historically been made only in the criminal punishment situations. The plaintiff has not pointed out, nor is the Court aware of, any cases which suggest the Eighth Amendment should be extended beyond criminal punishment and applied in a situation such as the instant case.

■ Last, the plaintiff argues the Act invades her Ninth and Tenth Amendment right to privacy. Again, no substantial constitutional question is raised by this assertion.

In summary, none of the constitutional objections to the Act are substantial and for that reason a Three Judge Court need not be convened.

■ The Court agrees that the Act of Congress requires widespread citizen participation. This participation is required at a time later than the time we are concerned with here. The Court will judicially notice the fact that there has already been substantial and extensive and widespread participation by citizens

in that part of Minneapolis to be benefited by the Model Cities legislation.

II. Turning then to the defendant's motion to dismiss, this Court does have jurisdiction to consider it since plaintiff raised no substantial constitutional questions such that a Three Judge Court must be convened.

Plaintiff's complaint should be dismissed for the following reasons:

1. *Plaintiff Lacks Standing to Sue—*

 In order to obtain judicial review of an administrative decision the plaintiff must demonstrate she has standing to secure that review. Standing can be secured by statute or by showing a particular common law wrong peculiar to the plaintiff or violation of plaintiff's constitutional rights.

The relevant statute, 42 U.S.C. §§ 3301–3313, secures no statutory standing for the plaintiff. Section 10(a) of the Administrative Procedure Act (5 U.S.C. § 702) secures no additional statutory standing since plaintiff must be an aggrieved party "within the meaning of any relevant statute." Duba v. Schuetzle, 303 F.2d 570 (8 Cir. 1962); Kansas City Power & Light Co. v. McKay, 96 U.S. App.D.C. 273, 225 F.2d 924 (D.C.Cir. 1955); Harrison-Halsted Community Group v. Housing & Home Finance Agency, 310 F.2d 99 (7 Cir. 1962), cert. den. 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 414.

The standing issue thus resolves itself to the question of whether a particular wrong peculiar to the plaintiff exists. The wrong plaintiff complains of must be an injury or threat to a particular right of her own as distinguished from the public interest. Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

Insofar as plaintiff complains of internal agency irregularity and failure by the agency to comply with the statutory mandate of Congress, no standing would be secured because this would not confer any constitutional or common law rights upon plaintiff as an individual, separate from her position as a member of the public generally. Perkins v. Lukens Steel Co., supra; Duba v. Schuetzle, supra; *Harrison-Halsted Community Group,* supra.

 Plaintiff's assertion of her status as a taxpayer will not secure standing in the instant case because even though there is nexus here as to the type of legislation involved, the taxpayer has not shown that the Act exceeds specific constitutional limitations imposed upon the exercise of Congressional taxing and spending powers. Thus, Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942 (1968), is distinguishable, first, because we do not have a First Amendment Establishment Clause attack before us, and it is debatable whether the language of the opinion should be read to extend beyond such an attack, and, second, because the Court recognized that standing will not be conferred for all allegations of unconstitutionality in that no standing is conferred

" * * * where a taxpayer seeks to employ a federal court as a forum on which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System."

Plaintiff's allegations of unconstitutionality, at this time, are representative of this latter category of generalized complaints to which the Court refers.

2. *HUD is a non-suable Executive Agency of the United States—*

 Housing and Home Finance Agency (HHFA) is considered an executive branch of the Government and as such a non-suable entity absent statutory authorization because of the doctrine of sovereign immunity. See, *Harrison-Halsted Community Group,* supra. By analogy, HUD, a Cabinet level executive agency and the administrative successor to HHFA, would also be a non-suable Government entity absent statutory authorization. Statutory authority to sue and be sued exists with respect to particular chapters (see, e. g., 42 U.S.C. § 1404a), but this authority is granted with specificity. Since there is no stat-

utory authorization to sue or be sued contained within the Act, one must conclude that HUD is a non-suable executive agency with respect to functions under this chapter and, as such, suit cannot be maintained against it in the instant case. See Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); Taft Hotel Corp. v. Housing & Home Finance Agency, 262 F.2d 307 (2 Cir. 1958).

3. *There is no personal jurisdiction over the Regional Director of HUD—*

■ Since HUD is a non-suable entity with respect to its functions under the Act, this aspect of the action, if maintainable at all, must be maintained as an in personam action against the Regional Director. Rule 4(f) of the Federal Rules of Civil Procedure provides that process must be served within the territorial limits of the State unless there is express statutory authorization for extraterritorial service. Rule 4(f) applies to service upon officers or agencies of the United States. Webb v. United States, 21 F.R.D. 251 (E.D.Pa.1957). 28 U.S.C. § 1391(e) does not authorize extraterritorial service in the instant case since *each* of the defendants is not a Federal defendant. Chase Savings & Loan Ass'n v. Federal Home Loan Bd., 269 F.Supp. 965 (E.D.Pa.1967). Thus, since neither the rule nor any special statute permits extraterritorial service upon the Regional Director of HUD, this Federal defendant was not properly served and the amended complaint must be dismissed as to him. Taft Hotel Corp. v. Housing & Home Finance Agency, supra; United Publishing and Printing Corp. v. Horan, 268 F.Supp. 948 (D.C.Conn.1967).

Additionally, it should be noted that even if service of process were possible, plaintiff has failed to comply with Rule 4(d) of the Federal Rules of Civil Procedure in that she has failed to send a copy of the summons and complaint by registered mail to the Attorney General in Washington, D. C.

In summary, the convening of a Three Judge Court is not required because the complaint fails to raise any substantial constitutional questions.

The request in the Complaint and the Motion for a temporary or preliminary injunction are denied because there is no denial of constitutional rights.

The motion of defendant Department of Housing and Urban Development to dismiss is granted because plaintiff has no standing to sue, the defendant is a non-suable executive agency, the Regional Director of the defendant has not been properly served, and no in personam jurisdiction over him has been obtained. Furthermore, Rule 4(d) of the Federal Rules of Civil Procedure has not been complied with.