**ESP FIDELITY CORPORATION,**
**Appellant,**

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al., Appellees.**

No. 73–2925.

United States Court of Appeals, Ninth Circuit.

March 6, 1975.

Mark A. Ivener, Beverly Hills, Cal., for appellant.

William D. Keller, U. S. Atty., Los Angeles, Cal., for appellees.

Before BARNES, WRIGHT and WALLACE, Circuit Judges.

## OPINION

BARNES, Senior Circuit Judge:

Appellant ESP Fidelity Corporation sells "ESP", which stands for Economic Security Program. ESP Fidelity's executive vice-president, Laurence August (an ex public relations counselor), and apparent developer of this program, euphemistically terms "ESP" a "consumer protection program." [1] In reality and substance, "ESP" is nothing more than a program of mortgage unemployment insurance. (See C.T. 306–307; cf. Plaintiff's Ex. 1, pp. 40, 41, 47, 49, 53–55, 62, 73).

The "ESP" plan works in the following manner: ESP Fidelity, on behalf of the builder, obtains a master insurance policy, issued by Reserve Insurance Company.[2] The builder in turn delivers to the home buyer an "ESP" certificate containing paraphrased terms of the master policy. Under a typical master policy, the original lender financing the purchase of the home is entitled to receive a maximum of six monthly home payments should the home buyer become involuntarily unemployed during the first three years of home ownership. Benefits become payable after 30 days of

---

[1] Occasionally Mr. August forgets to call "ESP" a "consumer protection plan." He is quoted by a columnist in The San Diego Evening Tribune as saying "What we're offering is an insurance program for anyone subject to involuntary unemployment. . . ." (Plaintiff's Ex. 1, p. 53).

[2] The District Court found that Reserve Insurance Company was the only company known to plaintiff writing or willing to write coverage for plaintiff's program. (C.T. 306)

consecutive unemployment. The "ESP" certificate recites that the builder is to make the six monthly payments, although in fact the master policy obligates the insurance carrier to pay the lender. The cost of "ESP" is covered by a one time premium paid by the builder, and is equal to one-half of the required monthly debt service payment (*i. e.*, interest, principal, insurance, taxes) for each home buyer. Based on the figures and estimates of ESP Fidelity, the cost to the builder is approximately one-half of one percent of the sales price of the house and lot. (*See, e. g.*, Plaintiff's Ex. 1, pp. 32, 40.) ESP Fidelity collects the premiums paid by the builder. As compensation for selling the insurance program to the builder, ESP Fidelity retains a portion of the premiums.

ESP Fidelity submitted its "ESP" plan to both the Veterans Administration (VA) and the Federal Housing Authority (HUD) for their approval. After lengthy correspondence including gentle pressure by several members of Congress to approve "ESP", both the VA and HUD withheld their approval of this plan, and each made determinations that the "ESP" plan constituted what in housing parlance is termed a "giveaway." As such, the price of the home (including *bona fide* transaction costs) would be reduced by the amount of the value of the "ESP" policy for the purposes of computing the maximum amount of financing which would be guaranteed or insured by the agencies in question.

ESP Fidelity objected to this determination and brought an action in Federal District Court against HUD, the VA, and the United States seeking "declaratory judgment and injunctive relief to declare unconstitutional a HUD and VA regulation." (C.T. 1). ESP Fidelity alleged in its complaint that HUD's and the VA's determinations were "arbitrary, capricious and unconstitutional" (presumably unconstitutional on due process grounds, although the complaint is not specific—*see* C.T. 1). ESP Fidelity invoked the Administrative Procedure Act,

5 U.S.C. §§ 701–706, and the Declaratory Judgments Act, 28 U.S.C. § 2201 as its basis of jurisdiction.

The district court found jurisdiction under 5 U.S.C. § 702 (C.T. 308) and made the following findings:

"XII. Administrative action was neither arbitrary, capricious, nor an abuse of discretion but was reasonable and in accordance with law.

"XIII. Administrative action was not contrary to constitutional right, power, privilege or immunity. . . .

"VI. The Administrative action herein was in the discretion of the agencies and was in compliance with law." (C.T. 306, 308).

In taking this appeal appellant calls this Court's attention to four "issues":

"1. Whether the District Court erred in not finding that the HUD and VA regulations were arbitrary, capricious and unconstitutional in that they violated the Due Process Clause of the Fifth Amendment of the Constitution by not having a rational basis for the application of these regulations to the instant case.

"2. Whether the District Court erred in not finding that the HUD and VA regulations were arbitrary, capricious and unconstitutional in that they violated the Due Process Clause of the Fifth Amendment of the Constitution in their invidious, discriminatory application.

"3. Whether the District Court erred in not finding that the conduct of HUD and VA in denying the requested relief was arbitrary and capricious.

"4. The Findings of Fact and Conclusions of Law are not supported by the evidence." (Appellant's Brief at 2).

We find appellant's contentions to be without merit. The District Court did not err. Its findings of fact and conclusions of law are well supported by the evidence. The record discloses substantial evidence in support of the position of the agencies in question, and the record

discloses that the agencies' determinations were rational, well considered, fairly reached, and without hint of arbitrary or capricious behavior, or constitutional infringement. On this record, and considering the "issues" appellant raises, this appeal is frivolous.

■ Even without regard to the merits we would affirm.

First, appellant lacks standing to complain as to any determination which HUD or the VA has made concerning the approval of disapproval of "ESP" or its classification of that plan as a giveaway. Neither ESP Fidelity nor the writer of the master policy, Reserve Insurance, is licensed or authorized to sell or write mortgage unemployment insurance, or any similar insurance program. (See Defendant's Exhibits 2, 3, 4, C.T. 306–07; cf. California Insurance Code, §§ 12640.10, 12441.)

■ Second, we concur in the district court's holding that:

"VII. Plaintiff is seeking equitable relief; the Court denies relief under the doctrine of unclean hands, in view of the misrepresentations[3] and violations of insurance laws[4] which permeate plaintiff's program." (C.T. 308).

■ Third, the district court lacked jurisdiction to grant the relief appellant seeks even if appellant had had standing to complain and was correct as to the merits. The court below properly concluded: "this Court has no jurisdiction to issue an injunction against the Secretary of Housing and Urban Development or the Administrator of the Veterans Administration, because these parties have not been named parties herein and have not been served." (C.T. 308). Neither HUD nor the VA may be sued eo nomine. See Evans v. U.S.V.A. Hospital, 391 F.2d 261 (2d Cir.), cert. denied, 393 U.S. 1040, 89 S.Ct. 667, 21 L.Ed.2d 589 (1968); Fermin v. Veterans Administra-

tion, 312 F.2d 554 (9th Cir.), cert. denied, 375 U.S. 864, 84 S.Ct. 135, 11 L.Ed.2d 91 (1963); Benson v. City of Minneapolis, 286 F.Supp. 614, 619–20 (D.Minn.1968); cf. Hartke v. F.A.A., 369 F.Supp. 741 (E.D.N.Y.1973); City of Sacramento v. Secretary of Housing and Urban Development, 363 F.Supp. 736 (E.D.Cal.1973); Harms v. F.H.A., 256 F.Supp. 757 (D.Maryland 1966); Napier v. Veterans Administration, 187 F.Supp. 723 (D.N.J. 1960) aff'd 298 F.2d 445 (3rd Cir. 1962), cert. denied and appeal dismissed, 371 U.S. 186, 83 S.Ct. 266, 9 L.Ed.2d 228 (1962).

We affirm.

---

**3.** Appellant in its advertisements misrepresented that the VA and HUD had approved its "ESP" plan when in fact they had not. (C.T. 307)

**4.** E. g., California Insurance Code §§ 12640.-10, 12441, and possibly also §§ 770.1, 755, 755.5.