**STATE OF COLORADO et al., Plaintiffs,**

v.

**VETERANS ADMINISTRATION et al., Defendants.**

**Civ. A. No. 76–F–1114.**

United States District Court, D. Colorado.

April 5, 1977.

As Amended May 11, 1977.

J. D. MacFarlane, Atty. Gen. of State of Colo., David E. Engdahl, Asst. Atty. Gen., Joseph N. DeRaismes, First Asst. Atty. Gen., Denver, Colo., for plaintiffs.

James L. Treece, U. S. Atty., Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo., Douglas D. Doane, Veterans Administration, Denver, Colo., for defendants.

## MEMORANDUM OPINION

SHERMAN G. FINESILVER, District Judge.

This suit is brought by the State of Colorado and two public junior college districts against the Veterans' Administration and its administrator and certain other employees in their official capacities. Plaintiffs complain that the actions of defendants in enforcing purported liability on the part of plaintiffs' several institutions of higher education, pursuant to 38 U.S.C. § 1785, are unlawful. Plaintiffs seek declaratory relief to the effect that 38 U.S.C. § 1785 is unconstitutional, that regulations promulgated pursuant to that statute are in violation of 38 U.S.C. § 1782, that the assertion of overpayment liability against plaintiffs while waiving liability as to the recipients of gratuities violates 38 U.S.C. § 3102(d), and that defendants' procedures for determining liability must conform to the provisions of the Administrative Procedure Act, 5 U.S.C.

§§ 501, *et seq.* Jurisdiction has been properly invoked under 28 U.S.C. § 1331.

Plaintiffs' motions for a preliminary injunction and temporary restraining order were denied after a hearing on December 3, 1976. A pretrial conference was held on January 12, 1977 and the parties agreed to an expedited briefing and hearing schedule. A trial on the merits was held on March 31, 1977 at which time the Court rendered a preliminary bench ruling and indicated that it would supplement the oral ruling with a written opinion. The bench ruling of March 31, 1977 is fully incorporated into this Memorandum Opinion and Order.

## FINDINGS OF FACT

This action arises from requests by the Veterans' Administration for reimbursement from Colorado educational institutions of overpayments made by the VA to veterans and other eligible persons under the Educational Assistance Program, Chapters 34, 35 and 36 of Title 38 U.S.C. Under the program a school certifies to the VA that the person eligible for benefits is enrolled in the school in a course of study that has been approved by the state approving agency. 38 U.S.C. § 1771. On the basis of the written certification the VA authorizes payments directly to the student. If the student satisfactorily continues training as certified, all payments are proper and no liability arises. If the student drops out of school, reduces training, takes unapproved courses, or in some other way becomes no longer entitled to the full monthly VA payment, the payments should be stopped or reduced.

There is a duty on the student to advise the VA of his change in status and if this is not done the student is responsible for repayment of the benefits received in excess of entitlement. Pursuant to a contract entered into between the State of Colorado and the Veterans' Administration, the State has assumed the duty to approve the courses of study and to assure that the student will promptly report to the VA any change in status. The individual educational institution is paid an annual reporting

fee which is computed on a per capita-veteran attendance basis. This fee is paid by the VA to defer the expenses involved in the eligibility certification and monitoring of students attending the school who receive VA educational gratuities.

The schools have the duty to timely report to the VA any change in the student's status. The VA relies on the information given it by the school to determine the amount of payment to which the student is entitled. When, for example, a student ceases to attend school and both the school and the student fail to inform the VA, the VA payments continue to the student even though he is no longer eligible. The excess payment to the student is termed an "overpayment." Congress has directed in 38 U.S.C. § 1785 that:

> Whenever the Administrator finds that an overpayment has been made to an eligible person or veteran as the result of (1) the willful or negligent failure of an educational institution to report as required . . . to the Veterans Administration excessive absences from a course, or discontinuance or interruption of a course by the eligible person or veteran, or (2) false certification by an educational institution, the amount of such overpayment shall constitute a liability of such institution, and may be recovered in the same manner as any other debt due the United States.

Defendants are now engaged in administrative proceedings under 38 U.S.C. § 1785 to determine plaintiffs' liability for the amounts of certain overpayments not recouped from the students who received the gratuities. As of October 8, 1976, shortly before this suit was filed, defendants had claims against 43 educational institutions in Colorado in relation to some 1,393 overpayment cases. The total amount claimed at that time was $1,414,054.51. By the time of the trial defendants had withdrawn charges of liability against 41 of the 43 institutions. The total number of individual cases and the dollar amount in dispute had been reduced by about one third.[1]

The first notification given to the schools of an overpayment assessment is by a form letter which fails to indicate the matters of fact and law asserted against the school. The letter has a series of boxes which an agent of defendants checks as he thinks appropriate. The form letter provides four choices for the reasons for the asserted liability which give only a general indication of the schools' deficiency. A fifth box, described only as "other", is also on the form. Upon occasion, a school will receive a form indicating the amount of the asserted liability, the name of the student involved, and the "other" box checked. No further indication as to the basis of liability is provided.

Liability determinations are made according to 38 C.F.R. § 21.4009(b), promulgated pursuant to 38 U.S.C. § 1785. That regulation provides a "rule of prima facie evidence" whereby:

> If a school is required to make periodic or other certifications, *failure to report facts which resulted in an overpayment will be considered prima facie evidence of willfulness or negligence.* Similarly, the submission of an incorrect certification as to fact will be considered prima facie evidence of a false certification. In either case the prima facie showing is subject to rebuttal. (emphasis added)

The regulations also provide that a student's change in status must be reported within 30 days after the change of status.[2] This 30 day reporting requirement has caused plaintiffs to change their internal procedures for monitoring student class attendance and progress. In most cases, the schools have been forced to acquire the use of computers to monitor class attendance at 20 to 30 day intervals. Instructors have been required to take daily attendance re-

---

1. No specific dollar amount is available since administrative adjudications of liability have been and are continuing during the pendency of this action.

2. The rule has recently been modified to permit a greater degree of flexibility; the basic reporting requirement, however, remains.

ports which are forwarded to school administration for introduction into the computer program.

The initial form letter, termed the prima facie liability letter, informs defendants that unless a hearing is requested a final liability determination will be entered. Oftentimes the prima facie liability letter applies to overpayments made to numerous students and provides no useful information about the basis of the liability claim.

Appeal from the prima facie liability determination is to the Field Station Committee on Waivers and Compromises, a VA inter-body. The members of the committee are responsible to or subject to the supervision and direction of the person who pursues the investigation and collection of overpayments. Several members of the committee are persons who perform investigatory functions with regard to overpayments and had participated in the initial prima facie liability determination.

If an appeal to the Field Station Committee results in a continued determination of plaintiffs' liability, the committee sends a computer generated "form letter" to the school. These letters indicate that "If payment is not received within 60 days we will withhold payment from any future claim payments to your institution, [e. g., reporting fees], and apply to this overpayment." Essentially, this is a threat that defendants will apply a set-off of unrecouped overpayments against any sums owed by VA to the school. The school may request an administrative review of the Field Station Committee's decision by the Central Office Committee on Waivers and Compromises in Washington, D.C.

Upon review by the Central Office Committee the results of the review are forwarded to the regional VA office. The Regional Office then sends a computer generated "form letter" to the educational institution. This letter informs the school of the amount of liability remaining after exhaustion of the administrative remedies, but does not include any statement of the facts upon which the final decision was based or the statutes or regulations which were applied to the facts.

The normal pattern for collection of overpayment liabilities is to first approach the student who received the overpayment. If collection cannot be accomplished from the student, defendants can proceed under 38 U.S.C. § 1785 to determine the liability of the educational institution. If liability is found, the schools will be liable for all overpayments not recouped from the student.[3] Recoupment from the schools can proceed in at least two ways: (1) forwarding the claim to the General Accounting Office for collection by lawsuit in federal court; and (2) off-setting the overpayment liability against amounts due the school under other VA programs.

While defendants contend that collection by lawsuit has not begun (and argued that such a suit is the proper arena for the determination of the issues presented), it is clear that the VA has considered the off-set possibility. If the off-set is used plaintiffs will not be provided with a judicial forum to review their claims until after collection is accomplished. Both the form letter sent plaintiffs from the Field Station Committee on Waivers and Compromises and defendants' Objection to Motion for Temporary Restraining Order, filed December 15, 1976, indicate that the VA has considered and, indeed, ordered the use of the set-off.

In certain cases, defendants have waived collection against the student, but have continued overpayment collection proceedings against the schools. These cases, however, represent a very small portion of the total overpayment liability asserted against plaintiffs.

## CONCLUSIONS OF LAW

### I.

■ Defendant has contended that the terms of 38 U.S.C. § 211(a) deprive this

---

3. If an overpayment is recouped from the student after collection from the school, the school is reimbursed.

court of jurisdiction to hear the claims of the plaintiffs. That statute provides, in part:

. . . the decisions of the Administrator on any question of law or fact under *any law* administered by the Veterans Administration *providing benefits for veterans* and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise. (emphasis added)

During our hearing on the motion for preliminary injunction, the court determined that § 211 does not preclude judicial review of the matters presented by plaintiffs. The history and scope of § 211 was recently considered by the Supreme Court in *Johnson v. Robinson*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) and *Hernandez v. Veterans' Administration*, 415 U.S. 391, 94 S.Ct. 1177, 39 L.Ed.2d 412 (1974). There the Court held that § 211 does not bar actions challenging the constitutionality of veterans' benefits. Instead, the statute only prohibits judicial review of a decision of the administrator relating to the providing of benefits when the administrator applies "a *particular* provision of the statute to a *particular* set of facts." 415 U.S. at 367, 94 S.Ct. at 1166. (emphasis added) The instant action concerns the constitutionality of 38 U.S.C. § 1785 and the constitutionality of the procedures used to enforce the statute.

Furthermore, the subject matter of the instant action is not within that category of cases with which the VA administrator was concerned when, in 1952, he argued against amendment of § 211. In that year the Administrator wrote a letter to the House Subcommittee on Veterans' Affairs stating his misgivings over proposed judicial review of VA benefit determinations. The Administrator expressed fear that judicial review

would inundate the courts. He also emphasized his belief that no right to judicial review existed when a government gratuity was denied. *Hearings on H.R. 360, 478, 2442, and 6777 Before a Subcomm. of the House Comm. on Veterans' Affairs*, 82 Cong., 2d Sess. at 1961–63 (1952).

Without considering the present day validity of the belief that no right to judicial review exists when a gratuity is denied (see *Goldberg v. Kelley*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)), the concern of "opening the floodgates" of litigation has little applicability to the situation where the VA is attempting to collect monies from a third party. Section 211 was designed to prevent judicial review when questions of providing benefits to veterans and others were at issue. Congress was not concerned, and most likely did not even consider, attempts by the government to obtain affirmative relief against third parties. *See,* Comment, *Judicial Review and the Governmental Recovery of Veterans' Benefits*, 118 U.Pa.L.Rev. 288 (1969) and Davis, *Veterans' Benefits, Judicial Review and the Constitutional Problems of "Positive" Government*, 39 Ind.L.J. 183 (1964).

In sum, we hold that 38 U.S.C. § 211(a) does not bar judicial review of actions brought against third parties, not recipients of VA gratuities.[4] *See also, DiSilvestro v. United States*, 405 F.2d 150 (2d Cir. 1968), *cert. denied*, 396 U.S. 964, 90 S.Ct. 441, 24 L.Ed.2d 429 (1969) and *Plato v. Roudebush*, 397 F.Supp. 1295 (D.C.Md.1975).

## II.

■ The Veterans Administration itself has been named a defendant in this action. The VA, under current law, is not a suable entity. *ESP Fidelity Corp. v. H. U. D.*, 512 F.2d 887 (9th Cir. 1975); *Evans v. U. S. V. A. Hospital*, 391 F.2d 261 (2d Cir.), *cert. denied*, 393 U.S. 1040, 89 S.Ct. 667, 21 L.Ed.2d 589 (1968); *Fermin v. Veterans Ad-*

---

4. We express no opinion on the applicability of 38 U.S.C. § 211 when the action is brought by the recipient of VA benefits. The court does note, however, that the no-review provision of § 211(a) has recently received Congressional attention. On January 19, 1977, Senator Gary Hart of Colorado introduced Senate Bill 364 which would subject VA benefit determinations to judicial review.

*min.*, 312 F.2d 554 (9th Cir.), *cert. denied*, 375 U.S. 864, 84 S.Ct. 135, 11 L.Ed.2d 91 (1962); *Benson v. City of Minneapolis*, 286 F.Supp. 614 (D.Minn.1968). Thus, the Veterans Administration, *eo nomine*, must be dismissed. The dismissal of the VA, however, does not dismiss the individual defendants.

The court does have the authority to exercise jurisdiction over the named defendants. While defendants have argued that plaintiffs are estopped from bringing suit against the named defendants, we find the cases cited by defendants inapplicable to the situation before the court.

### III.

The Tenth Circuit has stated that it is "axiomatic that a litigant must exhaust his administrative remedies . . . as a prerequisite to invoking the jurisdiction of the federal court." *Martinez v. Richardson*, 472 F.2d 1121 (10th Cir. 1973). A strict exhaustion requirement is thought desirable because it "tends to ensure that the agency have additional opportunities to discover and correct its own errors and this may help to obviate all occasion for judicial review." *McGee v. United States*, 402 U.S. 479, 484, 91 S.Ct. 1565, 1569, 29 L.Ed.2d 47 (1971).

Exhaustion is not required, however, when the issues presented to the court revolve around statutory interpretation and the constitutionality of legislation. *McGee v. United States, supra; McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Ashland Oil Co. v. Federal Energy Admin.*, 389 F.Supp. 1119 (N.D. Cal.1975); K. Davis, *Administrative Law* §§ 20.01 *et seq.* In this case the court is not asked to review the results of any particular overpayment liability. Indeed, we have not been presented with the factual input in any of the Administrator's individual determinations. Thus, in this case, exhaustion of administrative remedies prior to judicial intervention is not needed.

Likewise, exhaustion is not required when it seems "clear beyond a doubt that the relevant administrative agency will not grant the relief in question." *American*

*Federation of Government Employees v. Acree*, 155 U.S.App.D.C. 20, 475 F.2d 1289 (1973). *See also, Public Utilities Comm'n v. United States*, 355 U.S. 534, 539, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). In the instant case the Veterans Administration has been presented with all the arguments presented to the court. In their appeals through the present administrative process, plaintiffs have afforded defendants the opportunity to review and correct their procedures which plaintiffs claim violate the law. Defendants have declined to take any action on the issues presented. While it is true that the liability of the remaining two of the original 43 schools is still under administrative review, it is obvious that defendants have not and will not address the constitutional issues inherent in this litigation. Exhaustion is not required where it represents a hollow, futile act.

### IV.

Plaintiffs challenge the constitutionality of 38 U.S.C. § 1785 on a number of grounds. We find that the statute is constitutional.

Placing monetary liability for illegal payments on a party who holds the duty to monitor and report changes in student status—and thereby prevent overpayments—is rationally related to a legitimate government function. Plaintiffs assume the obligation to monitor and report on student status when they participate in the VA educational benefits program. As a simple matter of a contractual duty flowing from the school to the state certifying agency to the VA, the schools can be held liable for overpayments. Under the terms of § 1785 plaintiffs will be held liable only when the overpayments are found to be the result of negligence or willfulness in reporting changes in status, or false certification of eligibility. There exists no constitutional infirmity in such a regulation.

Congress clearly has the right to establish a procedure for disbursement of benefits to veterans and others through its enumerated power to raise and maintain an

army and navy. The VA educational benefit program was thought necessary to encourage enlistments. Requiring those who voluntarily participate in the program to be responsible for the funds they cause to be disbursed is legitimate. Under the spending power itself, Congress has the authority to place limitations and liabilities on those who have a duty to prevent unauthorized payments and who, through negligence, allow illegal payments to be made.

■ Plaintiffs also rely on the doctrine of intergovernmental immunity as a basis for the statute's unconstitutionality. The doctrine was clearly set forth in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). In *Usery*, the Supreme Court stated that a law rationally related to a legitimate government purpose might still fail under the Tenth Amendment if "the congressionally imposed displacement of state decisions . . . substantially restructure traditional ways in which the local governments arrange their affairs."

■ Assuming, *arguendo*, the state educational institutions qualify as "local governments", we fail to see how the reporting requirements substantially restructure traditional ways in which the schools arrange their affairs. It can hardly be said that causing an instructor to maintain attendance records substantially restructures traditional college education. While it might, in some instances, be a departure from past practices, that departure is not of a fundamental nature. Nor can it be honestly contended that causing college administrators to make monthly computer attendance checks "appears likely to be highly disruptive of accepted . . . practices in many governmental areas." *Usery, supra.* Accepting the balancing approach that the *Usery* majority intimated, and Justice Blackmun in concurrence expressed, the reporting requirement of § 1785 does not run afoul of the doctrine of intergovernmental immunity.

■ Moreover, it is questionable whether the doctrine extends to cases such as the present one. At footnote 17 of the majority opinion, the Court stated:

We express no view as to whether different results might obtain if Congress seeks to affect integral operations of state governments by exercising authority granted it under other ˙sections of the Constitution such as the Spending Power, Art. I, § 8, cl. 1. or § 5 of the Fourteenth Amendment.

Thus, we find that the doctrine of intergovernmental immunity, at present at least, extends only to cases arising under the commerce clause and that in any event it is not offended by 38 U.S.C. § 1785.

### V.

■ Plaintiffs also contend that the 30 day reporting regulation violates 38 U.S.C. § 1782. In part, that statute provides:

No department, agency, or officer of the United States in carrying out this chapter shall exercise any supervision or control, whatsoever, over any State educational institution.

Plaintiffs believe that the 30 day reporting regulation does result in the exercise of control over the administrative functions of the schools subject to § 1785 liability.

Both § 1782 and § 1785 were enacted as part of Public Law 89–358 on March 3, 1966. While the legislative history of the overpayment liability provision does indicate some concern on the part of Congress and witnesses from the academic community over the effect of § 1785 on educational autonomy, we cannot say that the reporting regulations transgress the prohibition of § 1782.

The 30 day reporting requirement is the result of 38 U.S.C. § 1784 which demands that "Educational institutions shall, without delay, report to the Administrator in the form prescribed by him, the enrollment, interruption, and termination of the education of each eligible person or veteran . . . ." As with §§ 1782 and 1785, section 1784 was enacted as part of Public Law 89–358. The original genesis of these sections was considered by the House Committee on Veterans Affairs in 1952. Testimony

there revealed the concerns of educators and college administrators about federal control of colleges and universities. *See Hearings on H.R. 360, etc., supra.* Nonetheless, the statutes envisioned some monitoring and liability on the part of the schools for negligent and willful failures to report changes in student status in a timely fashion. Reading all the statutes together, we cannot say that the 30 day reporting regulation violates 38 U.S.C. § 1782.

## VI.

■ Plaintiffs argue that the procedures used in liability adjudications by the VA are contrary to due process of law and are in violation of the Administrative Procedure Act. In light of our conclusion that the Administrative Procedure Act, 5 U.S.C. §§ 501 *et seq.*, applies to adjudications of school liability under § 1785, we do not reach the constitutional due process issue.

Defendants resist our conclusion by noting that the APA only applies to administrative adjudications "required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a). Defendants note that 38 U.S.C. § 1785 does not, by its terms, require a hearing on the record.

■ Such express language is not, however, a prerequisite for the application of the APA to adjudication procedures. Soon after the adoption of the APA, the Supreme Court had the opportunity to review its impact on administrative agencies. In *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), the Court found that the "on the record-required by statute" language in § 554(a) was not intended to necessitate an *in haec verba* recitation in the subject statute. The Court observed:

> We think that the limitation to hearings "required by statute" in § 5 of the Administrative Procedure Act [5 U.S.C. § 554] exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom or special dispensation; not those held by compulsion. We do not

think the limiting words render the Administrative Procedure Act inapplicable to hearings, the requirement for which has been read into a statute by the Court in order to save the statute from invalidity. They exempt hearings of less than statutory authority, not those of more than statutory authority. We would hardly attribute to Congress a purpose to be less scrupulous about the fairness of a hearing necessitated by the Constitution than one granted by it as a matter of expediency.

One year after *Wong Yang Sung*, the Court applied its earlier reasoning to an agency adjudication of fraud by the Postmaster General. The APA was held to apply. *Cates v. Haderlein*, 342 U.S. 804, 72 S.Ct. 47, 96 L.Ed. 609 (1951). Although the statute there (the forerunner of the present 39 U.S.C. § 4005) involved postal fraud, it is clear that the rationale of *Cates* would apply to determinations of false certification or willful or negligent failures to report. This is especially true where the results of the administrative adjudication can result in monetary liability and the stigma of participating in false and willful unlawful acts. Circuit court cases such as *Door v. Donaldson*, 90 U.S.App.D.C. 188, 195 F.2d 764 (1952) and *Kirby v. Shaw*, 358 F.2d 446 (9th Cir. 1966) buttress our conclusion that the phrase "required by statute to be determined on the record" is not to be taken as a strict and draconian necessity in adjudication cases.

Were this a case involving agency rulemaking rather than adjudication a different conclusion would be proper. *See United States v. Alleghenny-Ludlum Steel*, 406 U.S. 742, 757, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972). This recent Supreme Court pronouncement indicates the continued vitality of *Wong Yang Sung*.

■ The constitutional requirement of some type of hearing before a VA adjudication of liability is obvious. The VA has been careful to supply some type of hearing; but not being required to follow the procedures of the APA in benefit determi-

nations (see 5 U.S.C. § 701) the agency has not followed the APA in its liability determinations. Because liability determinations against educational institutions are subject to judicial review, the rationale of *Wong Yang Sung* requires those determinations to follow the procedures outlined in the Administrative Procedure Act, 5 U.S.C. § 701. Insofar as those adjudications involved the liability of educational institutions, we hold that the adjudications were not in accordance with the law and therefore invalid. This conclusion follows from the constitutional necessity of some type of hearing prior to a determination of liability and the strictures of *Wong Yang Sung v. McGrath.*

### VII.

It is also contended that defendants violate 38 U.S.C. § 3102(d) when they waive liability for overpayments on the part of the payment recipient, but persist in their claim for institutional liability. Section 3102 allows defendants to waive the recovery of a claim against the student "whenever the Administrator determines that recovery would be against equity and good conscience" and when certain procedures are followed by the student. Section 3102(d) provides that "No certifying or disbursing officer shall be liable for any amount paid to any person where the recovery of such amount is waived . . . ." In certain limited circumstances defendants have waived overpayment liability on the part of students, but have continued to demand recoupment of those sums from plaintiffs.

Section 3102(d) speaks in terms of the liability of the *certifying officer* and not in terms of the liability of the educational institution. While plaintiffs insist that the phrase "certifying officer" refers to a person at an educational institution who certifies the student's enrollment and progress, the legislative history of the statute causes us to conclude differently. The report of the House Committee of Finance indicates that the certifying officer mentioned in the statute is the individual employed by the Veterans Administration for certification purposes. H.R.Rep. No. 2198,

76th Cong., 2d Sess. (Oct. 3, 1940) at 2. Likewise, the House Committee on Expenditures observed that the purpose of the bill was, in part, "to relieve disbursing officers and certifying officers *of the Veterans Administration* from liability for payment." H.R.Rep. No. 1214, 76th Cong., 1st Sess. (July 18, 1939) at 1 (emphasis added). Thus, we conclude that defendants do not violate 38 U.S.C. § 3102(d) when they continue to assert liability against plaintiffs, although waiving liability against the student beneficiary.

### VIII.

An additional argument is that any determination of liability based on negligence, willful violation of the law or false certification must be accomplished by a judicial officer empowered under Article III of the Constitution. It is contended that it is beyond the authority of an administrative law judge to make such rulings. Plaintiffs have provided no convincing legal authority for this proposition, and it is therefore rejected.

Plaintiffs also assert that any presumption of prima facie liability resulting from a failure to timely report a student's change in status violates due process of law. Again, no convincing authority is cited. Having found that the APA is applicable, we note only that at 5 U.S.C. § 556(d) provides that the proponent of an order has the burden of proof. We are confident that defendants, as proponents of the liability order which results from the adjudication, will comply with § 556(d).