602 F.2d 926
 STATE OF COLORADO, Aims Junior College District Committee,
and Colorado Mountain College Junior College
District, Plaintiffs-Appellees-Cross-Appellants,
v.
VETERANS ADMINISTRATION, Defendant-Appellant-Cross-Appellee,
Richard L. Roudebush, Frank Newton, and R. C. Fox,
Defendants-Cross-Appellees(Appellants in No. 77-1748).
 Nos. 77-1746-47-48.
 United States Court of Appeals,
Tenth Circuit.
 July 11, 1979.
 
 Harland F. Leathers, Sp. Asst. to Asst. Atty. Gen., Civil Division, Dept. of Justice, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Joseph F. Dolan, U. S. Atty., Denver, Colo., Morton Hollander, Chief, Appellate Division, Washington, D. C., with him on brief), for appellant-cross-appellee, and defendants-cross-appellees.
 Deanna E. Hickman, Denver, Colo. (Joseph N. deRaismes, III, First Asst. Atty. Gen., Human Resources Section, David E. Engdahl, Sp. Asst. Atty. Gen., J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., and Edward G. Donovan, Sol. Gen., Denver, Colo., on brief), for appellees-cross-appellants.
 Before SETH, Chief Judge, and BREITENSTEIN and HOLLOWAY, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 This is a declaratory judgment action brought by the State of Colorado against the Administrator of the Veterans Administration challenging certain aspects of the Educational Assistance Program on constitutional grounds.
 
 
 2
 Both parties have appealed from portions of the judgment. The case involves a combination of contract obligations, state acts referring to and adopting federal statutes and regulations, and procedures of the Veterans Administration.
 
 
 3
 The facts, the proceedings, and the rulings are set out by the trial court in State of Colorado v. Veterans Administration, D.C., 430 F.Supp. 551. The details will not here be repeated as only a general outline seems to be necessary.
 
 
 4
 The trial court held that 38 U.S.C. § 1785 relating to the collection of "overpayments" by the VA was constitutional, that the Administrative Act should be followed on the claims, and that the decisions of the Veterans Administration Administrator under 38 U.S.C. § 1785 are judicially reviewable.
 
 
 5
 Benefits under the Educational Assistance Program were paid directly to the student-veterans. These payments were to continue only so long as the student was entitled thereto by continuing to pursue the approved courses and by attending classes. The school handled none of the funds, but was required to furnish periodic reports as to whether the student was still enrolled in the approved courses and whether he was attending classes. 38 U.S.C. § 1784. The school was paid a fixed sum under the contract with the VA for reporting. The student receiving benefits was also obligated to report changes in status.
 
 
 6
 The problem here arises under 38 U.S.C. § 1785 which in substance provides that the VA can collect from the school "overpayments" made to the students. These, according to section 1785, are payments to a veteran after a school has failed to report excessive absences or after the student has discontinued the course. The section recites that these "overpayments" may be collected or ". . . recovered . . . in the same manner as any other debt due the United States." This section was amended by Public Law 95-202 (91 Stat. 1433) after the trial court decided the case.
 
 
 7
 The VA advised some forty-three Colorado schools that it had claims for "overpayments" against them in some 1,400 overpayment cases. The number of schools was later reduced to two, and the number and amount of claims has been substantially reduced. The state filed its amended complaint for a declaratory judgment directed to the constitutionality of the statute, and to the validity of the claim procedure.
 
 
 8
 It is apparent from the record, as the trial judge concluded, that the Colorado statute, C.R.S.1973 § 23-60-303(2), adopts the Veterans Administration's Educational Assistance Program (Public Law 89-358) and the agency regulations pertaining thereto (38 C.F.R. 21.4001-9 and 21.4138-4027). The state statute also created the State Approving Agency provided for in 38 U.S.C. § 1771 to deal with the Veterans Administration, and to approve the school participation and programs of study for the eligible veterans. The State of Colorado entered into a contract with the Veterans Administration to formalize the state-federal joint operation of the Program. The contract, of itself, demonstrates the benefit to the state and the schools of the Program.
 
 
 9
 The trial court concluded, and we agree, that the duties of the schools arose primarily from the contract entered into with the VA by Colorado, with the adoption of the several federal statutory provisions and regulations relating to the Educational Assistance Program referred to above. These, of course, included the reporting requirements. The Colorado statute referred to above was also a formal adoption of the Program with the statutory, contractual, and regulatory undertakings.
 
 
 10
 The case is thus basically a matter of basic contract law, as the trial court indicated. When the issues are so examined, we find no substance to the plaintiffs' claim of interference with the educational process in Colorado, and no basis for any claim of unconstitutionality. The trial court disposed of these contentions in its memorandum, and we agree with its analysis and conclusion on this issue.
 
 
 11
 The action also challenged the administrative procedure followed by the VA as to the claims. As to this issue, the situation has changed since the trial court considered these several issues. The basic section of the Act to which the parties have devoted most of their arguments, 38 U.S.C. § 1785, was thus amended by Public Law 95-202 (91 Stat. 1433). The amendment increased the reporting fee payable to the schools and also eliminated a possible offset of "overpayments" against the reporting fees, payable to the schools, unless the liability for "overpayment" under section 1785 has not been contested by the school ". . . or has been upheld by a final decree of a court of appropriate jurisdiction." The amendment also stated that the Act did not require Daily attendance records.
 
 
 12
 It must be stressed that 38 U.S.C. § 1785 requires that when a liability for overpayments has been determined administratively, then the VA must sue to collect. Thus the section states that an overpayment ". . . may be recovered . . . in the same manner as any other debt due the United States." The procedure to sue would be pursuant to 28 U.S.C. § 1345 as in any other debt or claim. In such a proceeding the school could raise whatever defenses it considered valid. The trial in our view would be de novo. The VA in its brief also takes this view of the trial on the claims. In this context the administrative proceedings appear to become somewhat less significant.
 
 
 13
 There is no statute here applicable which requires an agency "hearing" to be structured by the Administrative Procedure Act. The Act does not create a right to a hearing where none otherwise exists. It ". . . specifies the procedure to be followed when a hearing is required by some other statute." Sisselman v. Smith, 432 F.2d 750 (3d Cir.). 5 U.S.C. § 554(a) in part provides:
 
 
 14
 "(a) This section applies, according to the provisions thereof, in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, except to the extent that there is involved
 
 
 15
 "(1) a matter subject to a subsequent trial of the law and the facts de novo in a court; . . ."
 
 
 16
 We must hold that the statute here concerned does not contain some clear indication that an adversary hearing with the use of a record is required. There are no magic words, and we perhaps would not be quite as far as the opinion in Duquesne Light Co. v. EPA, 481 F.2d 1 (3d Cir.), which was a rulemaking case, but it describes at least a point of departure in there referring to what it describes as the "thaumaturgic language." See also Marathon Oil Co. v. EPA, 564 F.2d 1253 (9th Cir.), where the court said in part that the determination ". . . does not rest on the presence or absence of the magical phrase 'on the record.' Absent congressional intent to the contrary, it rests on the substantive character of the proceedings involved," thus those "needing special procedural safeguards." See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136. In Anaconda Co. v. Ruckelshaus, 482 F.2d 1301 (10th Cir.), as to the EPA proceedings, we said in a rulemaking context:
 
 
 17
 "The Administrative Procedure Act requires that there be an adjudicatory hearing only if the agency statute specifies that the particular rule-making hearings be 'on the record after opportunity for an agency hearing.' No such requirement is set forth in the Clean Air Act. Notwithstanding that these words are used in other sections of the Act, omission of them in § 110(c) is therefore significant. See (United States v.) Allegheny-Ludlum Steel Co., 406 U.S. 742, 757, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972); 2 K. Davis Administrative Law Treatise § 13.08, at 225 (1958)."
 
 
 18
 See also Garvey v. Freeman, 397 F.2d 600 (10th Cir.).
 
 
 19
 As we have seen, 38 U.S.C. § 1785 does not provide for a "hearing," or a hearing "on the record" by the VA, and again the section expressly provides for a suit for collection at the end of the administrative road, and there is no setoff against reporting fees any longer. Under these circumstances, the Administrative Procedure Act is not applicable to the claims before the VA.
 
 
 20
 The issue of "review" of the VA determination likewise loses its significance when the requirement for a suit to collect is examined once the right of setoff was expressly eliminated. Any right to review the agency determination is during the course of the suit brought by the United States to collect. It is now apparent that the Administrative Procedure Act provides no jurisdictional ingredients. Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192.
 
 
 21
 The state has urged that there is a fatal conflict between sections 1782 and 1785, but we find no such serious defect.
 
 
 22
 The case is affirmed with such modifications as are required by the determinations herein made.