**UNITED STATES of America, Plaintiff,**

**v.**

**REINHARDT COLLEGE, Defendant.**

Civ. A. No. C83–1476A.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 13, 1983.

Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for plaintiff.

Gerald F. Handley, Lokey & Bowden, Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This action is before the court on plaintiff's motion for partial summary judgment. By this motion plaintiff seeks summary judgment as to defendant's third, seventh, eighth, ninth, tenth, eleventh, thirteenth, and fourteenth defenses. Defendant has conceded that summary judgment is appropriate as to its tenth, eleventh, and fourteenth defenses, which assert the doctrines of laches, estoppel, and waiver, respectively. Plaintiff's motion for summary judgment as to these defenses is therefore granted. The parties are also in agreement as to the limitations of plaintiff's ninth defense—accord and satisfaction—and plaintiff's thirteenth defense—the doctrine of payment. Subject to the limitations discussed below, plaintiff's motion for summary judgment as to these defenses is also granted. The only real controversy, then, concerns defendant's third defense—whether plaintiff's cause of action is unconstitutional; defendant's seventh defense—whether the VA requirement at issue in this case violates "academic freedom;" and defendant's eighth defense—whether plaintiff's cause of action is barred by the statute of limitations. These three defenses will be dealt with below after a discussion of the relevant facts and the statutory framework.

## I. STATUTORY FRAMEWORK.

This action is an effort by the government to recover from defendant overpayments made by the Veterans Administration to veterans and other eligible persons under the Educational Assistance Program, Chapters 34, 35 and 36 of Title 38, U.S.C. Under this program, the Veterans Adminis-

tration provided educational assistance benefits directly to eligible veterans enrolled in approved courses at Reinhardt College. 38 U.S.C. §§ 1681–1686. In order to be entitled to these benefits the eligible veteran must be enrolled in an approved course of study and, with certain narrow exceptions, must maintain regular attendance. 38 U.S.C. §§ 1772, 1780. If the veteran drops out of the program or does not maintain regular attendance, he is no longer eligible to receive benefits and any money paid in advance must be refunded. 38 U.S.C. § 1780(e). A statutory duty is placed upon the school to report to the VA when a student ceases to maintain regular attendance:

> Educational institutions shall, without delay, report to the Administrator in the form prescribed by the Administrator, the enrollment, interruption, and termination of the education of each eligible person or veteran enrolled therein under Chapter 34, 35, or 36.... 38 USC § 1784. *See also* 38 CFR § 21.4203, 4204.

The statute and regulations impose a clear duty upon the school to report regularly to the Veterans Administration as to the status of the veterans collecting the benefits. The purpose of the statute is clear. Congress intended that the Veterans Administration be notified quickly when any veteran collecting benefits ceased being entitled to those benefits. As compensation for these regular reports, Congress authorized the Veterans Administration to pay the schools a reporting fee. 38 U.S.C. § 1784.

The duty to report attendance is important because if the school does not report that a veteran collecting benefits is not maintaining regular attendance, the benefits may continue even though the veteran is no longer eligible to receive them. Such excess payments are classified as overpayments and are recoverable from the school pursuant to 38 USC § 1785:

> Whenever the Administrator finds that an overpayment has been made to an eligible person or veteran as the result of (1) the willful or negligent failure of an

educational institution to report, as required by this chapter or chapter 34 or 35 of this title and applicable regulations, to the Veterans' Administration excessive absences from a course, or discontinuance or interruption of a course by the eligible person or veteran, or (2) false certification by an educational institution, the amount of such overpayment shall constitute a liability of such institution, and may be recovered, except as otherwise provided in section 1784(b) of this title, in the same manner as any other debt due the United States. Any amount so collected shall be reimbursed if the overpayment is recovered from the eligible person or veteran. This section shall not preclude the imposition of any civil or criminal liability under this or any other law. Nothing in this section or any other provision of this title shall be construed as requiring any institution of higher learning to maintain daily attendance records for any course leading to a standard college degree.

During the 1970's defendant Reinhardt College had in its student body a number of veterans collecting benefits under this program. The college made the applicable reports and certifications to the VA, and the VA relied upon these reports and certifications in awarding the benefits. On July 27, 1977 the VA completed a compliance survey which disclosed that certain veterans had either withdrawn from classes or had lowered their number of hours of courses such that they were not eligible to receive benefits. Because the college had not advised the VA of these changes in the status of the students, the VA notified the college of its potential liability under 38 U.S.C. § 1785. The college raised a number of defenses which were rejected during the administrative process. The administrative process terminated on February 7, 1983 when the college declined to appeal the decision by the Regional Office Committee on School Liability.[1] The government filed its complaint to recover the over-

payments under 38 U.S.C. § 1785 on July 13, 1983.

## II. THE DEFENSES OF ACCORD AND SATISFACTION AND PAYMENT.

Both sides agree that the government is not entitled to recover from defendant college any overpayment it has collected from the veterans and that the college is entitled to a setoff of any overpayments the government collects from any of the veterans in the future. This right of setoff is mandated by section 1785 itself. The common law doctrines of accord and satisfaction and payment do not give defendant any further defense. The government's motion for summary judgment as to these defenses is GRANTED insofar as they would bar the government's claim for amounts not recovered from the veterans. It is DENIED insofar as those doctrines are coextensive with section 1785. In the event that the government is entitled to a recovery pursuant to section 1785, the government must reimburse the college for any amounts it has recovered, or will recover in the future, from the individual students.

## III. THE STATUTE OF LIMITATIONS.

Defendant's eighth defense is that plaintiff's cause of action is barred by the applicable statute of limitations. The statute of limitations for actions brought by the United States is found at 28 U.S.C. § 2415. This statute provides, in relevant part:

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final

---

**1.** Plaintiff's brief states that the college waived its right of appeal on February 3, 1983, but the letter to which plaintiff apparently refers is dated February 7, 1983. The court assumes that the latter date is the correct date for the termination of the administrative review process.

decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later . . . .

(b) Subject to the provisions of section 1426 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues: *provided,* . . . an action to recover for diversion of money paid under a grant program . . . may be brought within six years after the right of action accrues.

The government argues that this is an action to recover for diversion of money paid under a grant program and is therefore subject to the six-year statute of limitations provided for such actions in section 2415(b). Plaintiff disagrees that this is an action to recover for diversion of money paid under a grant program and argues that the three-year statute of limitations for normal tort actions applies. In *United States v. Gray,* 582 F.Supp. 1559 (N.D.Ga.1982) (Ward, J.) this court treated the government's action for repayment of a debt as "an action to recover for diversion of money paid under a grant program" and applied the six-year statute of limitations. However, the court did not explain its decision, and it is not clear from the opinion that the government's action was brought under 38 U.S.C. § 1785.

■ The parties both assume that this is an action in tort and differ only as to whether it is a particular species of tort. However, this court does not believe that this action is properly characterized as one founded upon a tort. In *State of Colorado v. Veterans Administration,* 430 F.Supp. 551 (D.Col.1977), aff'd, 602 F.2d 926 (1979), *cert. denied,* 444 U.S. 1014, 100 S.Ct. 663,

62 L.Ed.2d 643 (1980), the court treated the reporting duty of the college as contractual in nature. *See* 430 F.Supp. at 558. If the cause of action is founded upon "any contract express or implied in law or fact" then the six-year statute of limitations provided by subsection (a) of section 2415 applies. This court agrees with the District Court of Colorado that the cause of action here is contractual in nature. Although the statute and regulations require the school to submit reports on the status of enrolled veterans and eligible persons, the school is paid a fee for these reports. The duty owed by the college to report promptly and accurately any changes in status of the students it has certified as eligible for benefits is contractual in nature. The damages for breach of this duty are also contractual in nature.

Although Congress stopped short of imposing upon a college strict contractual liability for any breach and provided instead that the college would be liable only where its failure to report was due to willfulness or negligence or where it had reported falsely, the court does not believe that the mere use of these terms converts the action from a contract action into a tort action. The court holds, therefore, that the applicable statute of limitations in a suit by the government to recover from an educational institution overpayments of educational benefits pursuant to 38 U.S.C. § 1785, the applicable statute of limitations is the six-year statute of limitations provided by 28 U.S.C. § 2415(a).[2]

■ Section 2415(a) provides that the action must be filed "within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later . . . ." The general rule in contract actions is that the cause of action accrues at the time of the breach. *United*

---

**2.** The court's conclusion is bolstered by *United States v. Kass,* 740 F.2d 1493 (11th Cir.1984), in which the court applied section 2415(a) to an action to recover from a doctor overpayments of Medicare benefits. Although there are differences between an action to recover from a doc-

tor overpayments of Medicare benefits and an action to recover from a school overpayments of educational benefits, the court finds the actions sufficiently analogous to support its conclusion that section 2415(a) should apply to this case.

*States v. Kass,* 740 F.2d 1493 (11th Cir. 1984). The breaches giving rise to liability in this case occurred whenever the college failed to perform its duty to report a change in status as to each student. However, section 2415(a) incorporates the tolling provision of 28 U.S.C. § 2416(c):

> For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—
>
> > (c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances ....

Thus, section 2416 tolled the running of the six-year period until the material facts were known, or reasonably should have been known, by an official of the United States charged with the responsibility to act in the circumstances. This occurred when the government completed its compliance audit on July 25, 1977. Since the complaint was filed on July 13, 1983, within six years of the time the cause of action accrued, it is not barred by the statute of limitations.

The court notes that section 2415(a) provides alternate limitations periods: either six years from the time the cause of action accrued *or* one year from the time final decisions have been rendered in applicable administrative proceedings required by contract of law, *whichever is later.* The Regional Office Committee on School Liability issued its decision imposing liability on defendant college on January 7, 1983. This decision became the final agency decision when the college waived its right of administrative appeal on February 7, 1983. The government had one year from that date in which to file suit. This action was filed well within that period and is therefore timely.

Because this action was filed within the applicable statute of limitations, plaintiff's

motion for summary judgment as to defendant's statute of limitations defense is GRANTED.[3]

## IV. THE CONSTITUTIONALITY OF 38 U.S.C. § 1785.

■ Defendant has challenged in its correspondence, its answer to the complaint, its responses to plaintiff's interrogatories, and in its response to plaintiff's summary judgment motion, the constitutionality of 38 U.S.C. § 1785. Defendant has yet, however, to explain to the government or to this court why it believes the statute is unconstitutional. A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This applies as much to arguments of law as it does to assertions of fact. Defendant cannot wait until trial to ambush the government with a surprise argument as to the constitutionality of the statute. Defendant placed the constitutionality of the statute in issue in its pleadings, and the government has moved for summary judgment thereon. The government has produced case authority supporting the constitutionality of the very statute in issue. The burden is on the defendant to produce at least an argument challenging the constitutionality of the statute. This the defendant has not done. In the absence of any argument by defendant setting forth grounds why the statute should be declared unconstitutional, this court finds, in accordance with *State of Colorado v. Veterans Administration,* 430 F.Supp. 551 (D.Col.1977), *aff'd,* 602 F.2d 926 (1979), *cert. denied,* 444 U.S. 1014, 100 S.Ct. 663, 62 L.Ed.2d 643 (1980), that 38 U.S.C. § 1785 is constitutional. As the court in that case stated:

> Placing monetary liability for illegal payments on a party who holds the duty to

---

**3.** In the event that this court has erred in applying 28 U.S.C. § 2415(a), the court holds in the alternative that this action is a suit to recover for diversion of money paid under a grant program and was therefore timely filed within the six-year statute of limitations provided by section 2415(b).

monitor and report changes in student status—and thereby prevent overpayments—is rationally related to a legitimate government function. Plaintiffs assume the obligation to monitor and report on student status when they participate in the VA educational benefits program. As a simple matter of contractual duty flowing from the school to the state certifying agency to the VA, the schools can be held liable for overpayments. Under the terms of § 1785 plaintiffs will be held liable only when the overpayments are found to be the result of negligence or willfulness in reporting changes in status, or false certification of eligibility. There exists no constitutional infirmity in such a regulation.

Congress clearly has the right to establish a procedure for disbursement of benefits to veterans and others through its enumerated power to raise and maintain an army and navy. The VA Educational Benefit Program was thought necessary to encourage enlistments. Requiring those who voluntarily participate in the program to be responsible for the funds they cause to be disbursed is legitimate. Under the spending power itself, Congress has the authority to place limitations and liabilities on those who have a duty to prevent unauthorized payments and who, through negligence, allow illegal payments to be made. 430 F.Supp. at 558–59.

Since this court finds that 38 U.S.C. § 1785 is constitutional, the government's motion for summary judgment as to the college's defense that the statute is unconstitutional is GRANTED.

## V. ACADEMIC FREEDOM.

■ The college has argued that the reporting requirements of section 1784 and the regulations promulgated thereunder somehow violate the principle of academic freedom. The college does not argue that the statute regulates course content or restricts free speech. Rather, the college's argument is that in order to obtain the information necessary for the reports, the college would have to require its professors to take daily attendance in their classes. Since some professors prefer not to take attendance, a requirement that they do so would violate their academic freedom. As a former Chief Justice of the Georgia Supreme Court long ago said, "[T]he suggestion is pregnant with innovation but barren of law." *Minor v. State*, 63 Ga. 318, 321 (1879). For one thing, the statute does not require that the college take daily attendance of its students. In fact, section 1785 provides quite the contrary: "Nothing in this section or any other provision of this title shall be construed as requiring any institution of higher learning to maintain daily attendance records for any course leading to a standard college degree." What the statute does require is that the college keep track of any student it has certified to the government as being eligible to receive educational benefits under the program and report to the government promptly any interruption or termination of the education of such persons. How the school chooses to collect such information is left up to the school.

Congress has a right to make sure that the persons collecting educational benefits under the program are actually entitled to receive such benefits. Congress can also legitimately require that a college which participates in the program maintain adequate procedures for verifying the continued eligibility of the students to receive benefits. In fact, in order to obtain approval of its courses for inclusion in the program, a college must satisfy the state approving agency that it can keep track of attendance. 38 U.S.C. § 1775, which provides for approval of accredited courses, requires that:

(b) As a condition to approval under this section, the State approving agency must find that adequate records are kept by the educational institution to show the progress of each eligible person or veteran and must include as a minimum (except for attendance) the requirements set forth in section 1776(c)(7) of this title.

38 U.S.C. § 1776, which provide for approval of non-accredited courses, provides:

(c) The appropriate State approving agency may approve the application of such institution when the institution and its nonaccredited courses are found upon investigation to have met the following criteria:

. . . . .

(7) Adequate records as prescribed by the State approving agency are kept to show attendance and progress or grades, and satisfactory standards relating to attendance, progress, and conduct are enforced.

In order to have its course of study approved, the college had to make the showing required by 38 U.S.C. §§ 1775 and 1776. The college warranted to the state approving agency that it could provide the information required by 38 U.S.C. §§ 1775 and 1776. The college cannot now claim that providing such information would violate some principle of academic freedom. If the college feels strongly enough about this supposed academic freedom of not keeping track of its students, it can always decline to participate in the program in the future. But it cannot avoid the responsibilities it has incurred for its participation in the program in the past. The court finds that the requirements at issue in this case do not violate the college's academic freedom. The government's motion for summary judgment as to defendant's defense of academic freedom is GRANTED.

## VI.  CONCLUSION.

In sum, the government's motion for partial summary judgment as to defendant's third, seventh, eighth, tenth, eleventh, and fourteenth defenses is GRANTED. The motion is GRANTED IN PART and DENIED IN PART as to defendant's ninth and thirteenth defenses.